(95 South. 808)

**BENTLEY MERCANTILE CO. et al. v. BLACKWOOD. (6 Div. 593.)**

(Supreme Court of Alabama. April 5, 1923.)

**1. Bills and notes ⬅523—Evidence held to show absolute transfer of note to corporation.**

Evidence *held* to show that a note secured by a mortgage, which note contained all the elements of a negotiable instrument, as defined by Code 1907, § 4958, had become the absolute property of a mercantile company by the payee's transfer thereof to his son, who was head of the company, and who transferred the note to the company, giving the payee credit for the amount on the company's books, of which fact the payee had knowledge, and not that the note was transferred to the son only for the purpose of obtaining personal credit thereby.

**2. Bills and notes ⬅357—Bank taking note as collateral for pre-existing debt and new loan held bona fide holder.**

A bank to which a mercantile company was indebted, and which took from the company a negotiable note secured by mortgage as collateral security for the existing indebtedness for a loan made at the time to the company, and for further advances by the bank to the company, was a bona fide holder for value, in the absence of any evidence that it had any notice of any rights or equities of the original payee of the note at the time of the transfer.

Appeal from Circuit Court, Blount County; O. A. Steele, Judge.

Bill of interpleader by V. Foust and others against John Blackwood, the Bentley Mercantile Company, and the North Birmingham Trust & Savings Bank. Decree for cross-complainant John Blackwood, and cross-complainants Bentley Mercantile Company and North Birmingham Trust & Savings Bank appeal. Reversed and rendered.

Black & Harris, E. N. Hamill, and Stokely, Scrivner & Dominick, all of Birmingham, for appellants.

If the payee of a negotiable promissory note intrusts it before maturity to an agent to raise money thereon, the fraud of the agent in pledging the note with a different person or for a larger amount than the payee anticipated throws the loss on the payee, and not on an innocent purchaser for value. Théard v. Gueringer, 115 La. 242, 38 South. 979; 8 C. J. 338. Where a transferee takes a note as collateral security for a debt created at the time of, and because of, taking it as such security, he is a purchaser for value and in due course of business. 8 C. J. 487; Thompson v. Maddux, 117 Ala. 468, 23 South. 157; First Nat. Bank of Decatur v. Johnston, 97 Ala. 655, 11 South. 690; Miller & Co. v. Boykin, 70 Ala. 469. A transfer as security for a pre-existing debt makes the transferee of a negotiable promissory note a holder for value and in the usual course of business. 8 C. J. 488; Vogler v. Manson, 200 Ala. 351, 76 South. 117; Davies v. Simpson, 201 Ala. 616, 79 South. 48; Fortson v. Bishop, 204 Ala. 524, 86 South. 399.

Russell & Johnson, of Oneonta, for appellee.

No brief reached the Reporter.

MILLER, J. The bill of complaint as amended is presented to the court by V. Foust, A. G. Foust, and Velpo Foust, Jr., against John Blackwood, Bentley Mercantile Company, a corporation, and North Birmingham Trust & Savings Bank, a corporation. Complainants aver they purchased certain lands and machinery therein described from John Blackwood; that he executed to them a deed to the property, and they executed to him a mortgage on it for the unpaid purchase price; that all of the mortgage debt has been paid except one note payable to the order of John Blackwood for $2,133.34, dated July 29, 1916, due and payable December 1, 1918, with interest from September 1, 1916, payable at the Alabama Bank & Trust Company, Gadsden, Ala. The bill was filed December 2, 1918, the day after the maturity of the note. The complainants deposit in court $2,517.35, which is the principal and interest due on the note for the purpose of paying it to the lawful holder and owner of it. They aver the note is in possession of the North Birmingham Trust & Savings Bank; it is claimed by this bank and also by John Blackwood, as well as the Bentley Mercantile Company. The complainants by the bill seek to pay the note to the legal owner, and to enjoin each defendant from foreclosing the mortgage.

---

Demurrers to the bill of complaint as amended were overruled by the court. Each defendant filed answer in the nature of cross-bill, setting up his or its special claim to the proceeds of the note. Demurrers to each answer and cross-bill were overruled by the court. On final hearing and decree the court declared that John Blackwood, the original payee, was entitled to $2,517.35, and directed it to be paid to him. From this decree the Bentley Mercantile Company and the North Birmingham Trust & Savings Bank take separate appeals, and assign separately this decree as error.

John Blackwood avers and claims in his answer and cross-bill that he owns the note; that he transferred and loaned it to his son, E. J. Blackwood, without any consideration, for the purpose of obtaining money or credit for his son individually, and for no other purpose; there was no consideration for the transfer; there was no authority for it to be hypothecated for the benefit of Blackwood-Bentley Mercantile Company, a corporation, which afterwards by change of name became the defendant Bentley Mercantile Company; and that, by collusion and fraud, with knowledge of his rights and defenses, the note and mortgage securing it were hypothecated by the Blackwood-Bentley Mercantile Company with the North Birmingham Trust & Savings Bank for debts due this bank by it.

The North Birmingham Trust & Savings Bank avers it is a bona fide holder of the note in due course of business for valuable consideration, without any notice of any rights or defenses of John Blackwood thereto; that the Bentley Mercantile Company borrowed $1,000 cash from it on May 5, 1918, delivered this note for $2,133.34 as collateral to secure the payment of the $1,000 cash loan, and as security for loans the bank had already made it in the sum of $3,000, and as security for loans to be made in the future; and that the Bentley Mercantile Company now owes it over $7,000, which includes said cash loan of $1,000, for which this $2,133.34 note is held by it as security.

The Bentley Mercantile Company by its answer and cross-bill avers that John Blackwood owed it for merchandise over $3,000; that this note and mortgage were duly and formally transferred by separate instrument by John Blackwood to his son, E. J. Blackwood; and that the note was indorsed by John Blackwood and another son, J. E. Blackwood. E. J. Blackwood borrowed from I. E. N. Johnson the sum of $1,000, evidenced by a note to him, and transferred this $2,133.-34 note and mortgage to him as collateral security. When this $1,000 note matured the Bentley Mercantile Company paid I. E. N. Johnson the amount due on it, and he transferred it to the Bentley Mercantile Company. This defendant claims that E. J. Blackwood was president of the Blackwood-

Bentley Mercantile Company; that this $2,-133.34 note and accumulated interest was credited by him on the books to the $3,000 account of his father, John Blackwood; and that it owns this note and mortgage. It avers it transferred this note and mortgage before its maturity to the North Birmingham Trust & Savings Bank to secure a cash loan of $1,000, which is still unpaid, to secure a prior indebtedness of $3,000, and as security for loans to be made in the future; that the bank is a bona fide holder of the note as security for about $7,000 due it, without any notice of any equities or defenses or rights of John Blackwood to it.

On September 30, 1916, John Blackwood, by formal instrument in writing, transferred this Foust mortgage and the debt it secured to E. J. Blackwood for a recited consideration of $5 and other sufficient and valuable consideration. This was duly acknowledged before a notary public, and duly recorded. This note secured by the mortgage was indorsed by John Blackwood and J. E. Blackwood. E. J. Blackwood was president of the Blackwood-Bentley Mercantile Company. His father owed the concern over or about $3,000, and on December 29, 1916, he placed this $2,133.34 note and interest as a credit on that account. A statement of the account with this credit, showing balance due, was mailed to John Blackwood. On November 18, 1916, E. J. Blackwood borrowed for the Blackwood-Bentley Mercantile Company $1,-000 from I. E. N. Johnson, and pledged that $2,133.34 note as security therefor. This note was paid by the Bentley Mercantile Company, and the note was transferred and the collateral delivered to it. E. J. Blackwood resigned as president of the Blackwood-Bentley Mercantile Company, and on July 21, 1917, there was a final settlement in writing between E. J. Blackwood and the Blackwood-Bentley Mercantile Company. It was signed by E. J. Blackwood and his brother, J. E. Blackwood, in which they agreed to pay a prior lien of $600 or more on machinery on the land, and which was a prior lien to this mortgage; and they state in this written agreement and settlement that this Foust note and the mortgage to John Blackwood were transferred and assigned to Blackwood-Bentley Mercantile Company, and it is "the present owner of said note."

It is true John Blackwood first testified that he indorsed the note for $2,133.34, and "lent it to my son, E. J. Blackwood, for the purpose of obtaining money or credit for himself individually, and for no other purpose," but afterwards he testified as follows:

"E. J. Blackwood wrote me for the Foust note, and when I sent it to him I did not know or understand whether the note was for him individually or for Blackwood-Bentley Company. I do not know until this day of my own knowledge. * * * When I sent the note to E. J. Blackwood I understood that he had authority

to use it individually or to secure the company debt."

[1] The testimony is in conflict, but we are convinced by its weight and by the written documents that this Foust note of $2,133.34 became legally, bona fide, the property of the Blackwood-Bentley Mercantile Company by being placed to the credit of John Blackwood's account with it by his son, the president of the company, to whom it was legally transferred, with his father's authority or approval by word or act. Both of his sons stated in writing on final settlement with the Blackwood-Bentley Mercantile Company that it was the present owner of the note. At that time it had been formally transferred to E. J. Blackwood by John Blackwood, and had been credited by E. J. Blackwood on the account of John Blackwood with the Blackwood-Bentley Mercantile Company, and a statement of the account with this credit had been mailed to John Blackwood; and, after crediting the account with it, there was still a balance due the company by John Blackwood.

[2] The evidence is without dispute that on May 5, 1918, before the maturity of the $2,133.34 note, after it had been credited on the account of John Blackwood, the Bentley Mercantile Company borrowed $1,000 cash from the North Birmingham Trust & Savings Bank, and to secure this cash loan, together with a past indebtedness of about $3,000, and to secure any other debts it may contract with the bank, transferred this $2,133.34 note to this bank. We find no evidence in the record indicating that the bank, when it made this cash loan and paid it, and when it made and paid the additional loans to the Bentley Mercantile Company, had any actual or constructive notice of any rights of John Blackwood to the note or of his equities or of his defenses against the transfer of the note to his son E. J. Blackwood or to Blackwood-Bentley Mercantile Company. Section 5007, Code 1907; Sherrill v. M. & M. T. & S. Bk., 195 Ala. 175, 70 South. 723.

The Foust note is a negotiable instrument as defined by section 4958 of the Code of 1907. It is in writing; it is signed by the makers; they promised in it to pay a sum certain in money, $2,133.34, with interest from September 1, 1916, at a fixed future time, "on December 1, 1918, after date, without grace," and it was payable to the order of John Blackwood. These are the requisites required to make the note negotiable. Section 4958, Code 1907. It was also payable at a particular place, "at the Alabama Bank & Trust Company, Gadsden, Ala." This note was duly indorsed by the payee, John Blackwood. In this condition it was delivered with the mortgage to the North Birmingham Trust & Savings Bank as collateral by the Bentley Mercantile Company, to secure a cash loan from the bank to it of $1,000, which was drawn out by the Bentley Mercantile Company, and to secure pre-existing debts and to secure any other debts it may afterwards contract with the bank.

We find and hold that the Blackwood-Bentley Mercantile Company became the owner of this $2,133.34 note when it was placed to the credit of John Blackwood's account. When the Bentley Mercantile Company became the successor to the rights and assets of the Blackwood-Bentley Mercantile Company, this note became its property unconditionally. When it secured the $1,000 cash loan from the bank, it contracted in writing with the bank to and did transfer and deliver this $2,133.34 note to the bank as collateral to secure the $1,000 cash debt, and any other liability to the bank then existing or that may hereafter be contracted by it with the bank. This note is now held by the bank under that contract as collateral to secure an indebtedness of over $7,000 due it by the Bentley Mercantile Company. The $1,000 cash loan is included in the $7,000 debt. Under this contract the $2,517.35 in cash, deposited in court by complainants, to pay this note, is the property of the North Birmingham Trust & Savings Bank, to be credited on the debt due it by the Bentley Mercantile Company, for which the note was held by it as collateral security.

The court erred when it decreed this $2,517.35 belonged to and ordered it paid to John Blackwood. It should have decreed and declared it the property of the North Birmingham Trust & Savings Bank, to be credited on the debt due it by the Bentley Mercantile Company. A decree to that effect will be entered here, and John Blackwood will be taxed with the cost of this court and the court below.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.